### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**LINDA J. ROBLES, as Personal**
**Representative of the Estate of**
**MIGUEL A. MERCADO, deceased,**

       **Plaintiff,**

v.                                  **Case No. 8:19-cv-1293-T-60AAS**

**GEICO INDEMNITY COMPANY,**

       **Defendant.**
_____/

### REPORT AND RECOMMENDATION

GEICO Indemnity Company moves for summary judgment. (Docs. 114, 140). Linda Robles, as Personal Representative of the Estate of Miguel A. Mercado (the Estate), opposes the motion. (Docs. 135, 141). It is **RECOMMENDED** the motion be **GRANTED**.

### I.    BACKGROUND[1]

This is a third-party insurance bad-faith action brought by the Estate against GEICO. (Doc. 1). On October 19, 2008, Aaron Swanson's vehicle rear-ended a truck while two City of Tampa employees, Miguel Mercado and Joseph Campbell, were working. The accident killed Mr. Mercado and Mr. Campbell sustained injuries. (*Id.*

---

[1] The parties agree to GEICO's "Statement of Undisputed Facts" (Doc. 113) but the plaintiff does not concede the admissibility of the claims notes or the attached documents. (Doc. 135, p. 1, n. 1). The court considers the facts in the light most favorable to the Estate as the nonmoving party. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

at ¶13). GEICO insured Mr. Swanson under an automobile liability policy that provided bodily injury (BI) coverage for $10,000 per person and $20,000 per occurrence. (Doc. 1-1).

GEICO was notified of the accident on October 21, 2008. (Doc. 113, Ex. A, p. 5). On October 22, 2008, GEICO claims examiner Helen Gerdjikian advised Mr. Swanson that the claims against him could exceed his coverage, that he would be personally liable for any amount over his policy limits, and that he had the right to obtain personal counsel. (*Id.*, Ex. B). On October 23, 2008, Ms. Gerdjikian contacted Mr. Mercado's widow, Gloria Mercado. (*Id.*, Ex. C). On October 30, 2008, Ms. Gerdjikian sent Ms. Mercado a letter and advised her that GEICO would tender Mr. Swanson's $10,000 BI policy limits and enclosed an affidavit of coverage. (*Id.*, Ex. D). The letter also stated there was a worker's compensation lien connected to the claim. (*Id.*). Also, on October 30, 2008, Ms. Mercado executed a representation agreement with Christine Franco, Esq., from Franco and Franco, P.A. (*Id.*, Ex. E).

On November 12, 2008, Ms. Gerdjikian contacted Ms. Franco's office and spoke with Melissa Barile, Ms. Franco's employee, and requested a letter of representation. (*Id.*, Ex. A, p. 25). According to Ms. Gerdjikian, Ms. Barile stated she was unsure if Ms. Franco represented the Estate. (*Id.*). On November 13, 2008, Ms. Gerdjikian sent a letter to Ms. Franco and stated that GEICO would tender the policy limits when it received a letter of representation. (*Id.*, Ex. H). On November 19, 2008, Ms. Gerdjikian noted she spoke again with Ms. Barile, who again advised Ms. Gerdjikian she was unsure if Ms. Franco represented the Estate. (*Id.*, Ex. A, p. 31). The same

2

day, Ms. Gerdjikian wrote Mr. Swanson a letter and advised that GEICO tendered its full policy limits to Mr. Campbell in exchange for a release and that Ms. Gerdjikian was still unsure if Ms. Franco represented the Estate.[2] (*Id.*, Ex. J).

On November 25, 2008, Ms. Gerdjikian sent a letter to Ms. Franco and, for the fourth time, inquired if Ms. Franco represented the Estate and again offered to tender the $10,000 BI policy limits when GEICO received a letter of representation. (*Id.*, Ex. K). Ms. Gerdjikian stated that if she did not hear from Ms. Franco within a week, Ms. Gerdjikian would assume Ms. Franco did not represent the Estate. (*Id.*).

On December 8, 2008 and December 17, 2008, Ms. Gerdjikian left messages with Ms. Barile about whether Ms. Franco represented the Estate. (*Id.*, Ex. A, pp. 38, 39). On December 17, 2008, Ms. Gerdjikian also sent a letter to Ms. Franco and offered to tender Mr. Swanson's policy limits, but Ms. Gerdjikian could not send the check to Ms. Franco if she did not represent the Estate. (*Id.,* Ex. M).

On December 31, 2008, Ms. Gerdjikian left another message with Ms. Franco's office. (*Id.*, Ex. A, p. 41). On January 8, 2009, Ms. Gerdjikian sent Ms. Mercado a letter and stated that Ms. Gerdjikian tried to contact Ms. Franco several times but still had not received a letter of representation. (*Id.*, Ex. P). Ms. Gerdjikian advised Ms. Mercado that she sent a check for the policy limits under separate cover that included the workers' compensation carrier and that GEICO would reissue the check if the workers' compensation lien was resolved. (*Id.*). Ms. Gerdjikian sent the check and a release to Ms. Mercado on January 9, 2009. (*Id.*, Ex. Q).

---

[2] The letter is mistakenly dated October 30, 2008. (Doc. 113, ¶ 14, n. 2).

On March 6, 2009 and April 3, 2009, Ms. Gerdjikian sent letters to Mr. Swanson and stated that Ms. Mercado had not cashed the check or returned the release. (*Id.,* Exs. T, U). On April 30, 2009, Ms. Gerdjikian sent Ms. Mercado a letter and again asked whether the Estate retained counsel. (*Id.*, Ex. V). On May 28, 2009 and June 25, 2009, Ms. Gerdjikian sent letters to Mr. Swanson and stated that Ms. Mercado had not cashed the check. (*Id.*, Exs. X, Y). On June 25, 2009 and July 24, 2009, Ms. Gerdjikian sent letters to Ms. Mercado and asked about the status of the check and the release. (*Id.*, Exs. Z, AA).

On August 3, 2009 (over nine months after Ms. Franco began representing the Estate), Ms. Franco mailed GEICO a letter of representation. (*Id.*, Ex. BB). Ms. Franco offered to settle the Estate's claims against Mr. Swanson in exchange for payment of the policy's BI limits and specified property damage amounts. (*Id.*). Ms. Franco requested an affidavit from Mr. Swanson verifying that the only insurance coverage was GEICO's policy and that he owned no real property not homesteaded. (*Id.*). Ms. Franco also requested that the release not contain hold harmless or indemnification language.[3] (*Id.*). Ms. Franco's letter requested "a timely response with in [sic] the next four weeks," so approximately by August 31, 2009. (*Id.*).

GEICO received Ms. Franco's August 3rd letter on August 5, 2009. (*Id.*, Ex. A, p. 55). The next day, on August 6, 2009, Ms. Gerdjikian faxed an affidavit of coverage

---

[3] The offer stated, "[t]he Personal Representative of the estate will sign a release for all claims but she cannot agree to a release containing a hold harmless or indemnity agreement. . . Please understand that any attempt to provide a release that contains a hold harmless, indemnity agreement . . . will be treated as a rejection of this good faith offer." (*Id.*).

and certified copy of the policy to Ms. Franco. (*Id.,* Ex. A, p. 59). One day later (August 7, 2009), Ms. Gerdjikian faxed Ms. Franco a blank affidavit and proposed release that included a hold harmless and indemnity agreement.[4] (*Id.*, Ex. CC). On August 11, 2009, Ms. Gerdjikian sent a letter to Ms. Franco and stated that Ms. Gerdjikian "previously faxed a copy of our release and affidavit for [Ms. Franco's] review to see if it would suffice [her] requirements." (*Id.*, Ex. DD). The same day, Ms. Gerdjikian sent Mr. Swanson a letter and included a copy of the August 3, 2009 demand, and an affidavit of coverage for him to complete. (*Id.*). Ms. Gerdjikian advised Mr. Swanson that he could be personally liable for judgment over his policy limits if the claim did not settle. (*Id.*).

On August 12, 2009, Ms. Gerdjikian sent a letter to Ms. Franco and enclosed Mr. Swanson's executed affidavit and a certified copy of the policy. (*Id.*, Ex. FF). Ms. Gerdjikian stated that GEICO issued a check for the personal property and a check for the BI policy limits. (*Id.*). The letter also stated:

> An affidavit that you requested for our insured to sign was not included with your demand, therefore I faxed one to your office along with our release to see if they would both suffice your needs. I have not had a response to date. I am enclosing copies again for your review. Again, I am requesting that if you need to change anything, please do so and forward to my attention as soon as possible.

(*Id.*). GEICO immediately issued the checks and sent them to Ms. Franco. (*Id.,* Exs. GG, HH).

---

[4] Ms. Gerdjikian testified she knew Ms. Franco did not want the release to contain hold harmless or indemnification language. (Doc. 81-1, 140:9-141:7; 122:24-123:24). Ms. Gerdjikian testified she sent a blank release so "[Ms. Franco] [could] just take out or add whatever [she] want[ed] in it." (*Id.* at 132:3-9).

On August 17, 2009, Ms. Gerdjikian faxed Mr. Swanson's completed affidavit to Ms. Franco. (*Id.*, Ex. JJ). On the cover page, Ms. Gerdjikian asked whether the affidavit was acceptable. (*Id.*). On August 24, 2009 (approximately one week before Ms. Franco's required response deadline), Ms. Gerdjikian sent another follow-up letter to Ms. Franco about the release and affidavit, and again requested that Ms. Franco advise if they were acceptable. (*Id.*, Ex. KK). On October 28, 2009, Ms. Gerdjikian followed up again. (*Id.*, Ex. LL). At no time before Ms. Franco's required response deadline did Ms. Franco respond to any of Ms. Gerdjikian's seven pre-deadline written communications.

Instead, on November 12, 2009 (over two months after Ms. Franco's imposed response deadline), GEICO received a rejection letter from Ms. Franco. (*Id.* Ex. NN). The letter stated:

> I have received GEICO's counter offer to my client's good faith offer of August 3, 2009. I must admit that I am surprised that GEICO would not accept our good faith offer. . . .

> Our good faith offer specifically stated that you provide my client's with an affidavit from your insurance [sic] and their insurance agents verifying that the only coverage governing this claim was the coverage set forth in GEICO's affidavit. Although you provided me with an affidavit from your insured, Aaron Swanson, for some reason you did not provide us with an affidavit from Mr. Swanson's insurance agent.

> Moreover, I specifically told you that my client could not agree to a release containing a hold harmless or an indemnity agreement, and could not agree to releasing anyone other than your insured. . . . The 'complete release of all claims' that you sent me requires that my client's release not only Mr. Swanson but also release all of his officers, directors, agents, or employees of the foregoing, their heirs, executors, administrators, agents, or assigns. Requiring us to do so was a rejection of our good faith offer. . . .

> I took your counter offer to my clients and they have respectfully rejected your counter offer. . . . My client's [sic] have instructed me to seek the full value of their loss from your insured. . . .

The next day, on November 13, 2009, Ms. Gerdjikian responded to Ms. Franco's rejection letter. (*Id.*, Ex. OO). The letter stated:

> Please be advised that GEICO did respond in good faith and did not counter offer. Your letter stated that we did not provide an affidavit from Mr. Swanson's insurance agent. An Affidavit of Coverage was faxed to your office on August 7, 2009 along with also being sent through the mail. As you [sic] aware, GEICO does not have agents therefore the affidavit sent signed by our manager should suffice.
>
> Your demand dated August 3, 2009 was received in our office on August 5, 2009. . . . You stated in your correspondence that the demand that I sent you requires your client to release not only Mr. Swanson but also, release all of his officers, directors, etc. Please be advised that the release that I sent you did not have Mr. Swanson's name on it or your client's. **The release was sent to be reviewed by you and to make any necessary changes, that is why it was blank.**
>
> . . . I have sent your office numerous letters since November 13, 2009 along with numerous phone calls as we did not receive a letter of representation from your office. After numerous attempts without any response from your office, a release and check was made out to the Representative of the Estate of Miguel Mercado and Commercial Risk and sent to Mrs. Mercado on January 9, 2009. We have tried to resolve this claim from the beginning without any responses from your office. GEICO in Good Faith made many attempts to tender our insured's policy limits of $10,000.00 from the start.
>
> We are still in a position to send a release that meets your requirements or as previously discussed, you may make the changes on the blank release that we sent.

(*Id.*) (emphasis in original). Ms. Franco did not respond.

On December 17, 2009, Ms. Robles (Mr. Mercado's daughter and the personal representative of the Estate) filed a wrongful death action against Mr. Swanson. (*Id.*, Ex. PP). The wrongful death action led to the entry of a judgment against Mr.

Swanson for $1,667,667, *Linda J. Robles, as Personal Representative of the Estate of Miguel A. Mercado v. Aaron Swanson*, Case No. 09-CA-31972. (*Id.*, Ex. QQ). This bad faith suit followed. (Doc. 1).

GEICO moves for summary judgment, arguing that no reasonable jury could conclude GEICO acted in bad faith. (Doc. 114). The Estate opposes the motion.[5] (Doc. 135). GEICO replied to the Estate's opposition. (Doc. 140).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it is a legal element of the claim that may affect the outcome under the substantive governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn in the light most favorable to the non-

---

[5] The Estate filed a notice of supplemental authority on September 23, 2020. (Doc. 141). The supplemental authority concerns the inadmissibility of the insurer's activity log containing notes about settlement negotiations and privileged mediation communications. (*See* Doc. 141-1). Here, in contrast, Ms. Gerdjikian's notes merely list her attempts to contact Ms. Mercado and Ms. Franco.

moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## III.   ANALYSIS

GEICO moves for summary judgment on the Estate's assertion of bad faith claim handling and contends GEICO acted diligently to resolve the claim but there was no reasonable opportunity for settlement. (Docs. 114, 140). Ms. Robles responds that the diligence and reasonableness of GEICO's handling of this claim and its response to the Estate's demands are questions of fact for the jury. (Doc. 135).

### A.   Applicable Law

Florida law recognizes third-party bad faith actions brought by the injured third party against the insured's liability carrier. *QBE Ins. Corp. v. Chalfonte Condo.*

*Apartment Ass'n, Inc.*, 94 So. 3d 541, 545 (Fla. 2012).[6] The difference between first-party and third-party bad faith causes of action is "a third-party bad faith cause of action arises when the insurer fails to act in good faith in handling a claim brought by a third party against an insured, whereas a first-party bad faith cause of action arises when an insurer fails to act in good faith in the processing of the insured's own first-party claim." *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 455 (Fla. 2006). The basis for the claim, however, remains the insurer's duty of good faith to the insured, not any duty of the insurer to the third party. *Id.* at 457 (quoting *Fidelity & Cas. Co. v. Cope*, 462 So. 2d 459, 461 (Fla. 1985)).

Florida's bad faith law is "designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 682 (Fla. 2004). "[T]he critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018). An insurer is obligated "to act in good faith in the investigation, handling, and settling of claims brought against the insured." *Berges*, 896 So. 2d at 682-83. This good faith duty requires "the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps

---

[6] In diversity cases, the substantive law of the forum state applies. *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009).

he might take to avoid same." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980).

Whether an insurer acted in bad faith is determined under a "totality of the circumstances" standard. *Harvey*, 259 So. 3d at 7 (quoting *Berges*, 896 So. 2d at 680). The focus of a bad faith action is on the actions "of the insurer in fulfilling its obligations to the insured" and not the claimant. *Harvey*, 259 So. 3d at 7 (quoting *Berges*, 896 So .2d at 677). "Although determining whether an insurer acted in bad faith is generally a question for the jury, courts applying Florida law have granted summary judgment if the undisputed facts would not allow any reasonable jury to conclude the defendant breached its duty of good faith." *Martin v. Allstate Prop. & Cas. Ins. Co.*, No. 19-11164, 2019 WL 6713436, at *4 (11th Cir. Dec. 10, 2019) (citing *Clauss v. Fortune Ins. Co.*, 523 So. 2d 1177, 1178 (Fla. 5th DCA 1988).[7]

## B.   Application

The undisputed facts show that no reasonable jury could find that GEICO acted in bad faith. After being notified of the accident on October 21, 2008, GEICO claims examiner Ms. Gerdjikian promptly investigated the accident and contacted Mr. Swanson. (Doc. 113, ¶¶ 4, 5). On October 30, 2008, nine days after GEICO received notification of the accident, GEICO offered to tender Mr. Swanson's full $10,000 BI policy limits to Ms. Mercado. (*Id.* at ¶ 7).

On November 12, 2008, after receiving notice that the Estate may be

---

[7] Unpublished opinions of the Eleventh Circuit are not considered binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2.

represented by Ms. Franco, Ms. Gerdjikian contacted Ms. Mercado and Ms. Franco's office requesting confirmation and repeatedly contacted them thereafter. (*Id.* at ¶¶ 11, 13, 15, 16, 18, 19, 20, 21, 23). After numerous unsuccessful attempts to confirm Ms. Franco's representation, GEICO tendered Mr. Swanson's full BI policy limits to Ms. Mercado on January 8, 2009, with a proposed release. (*Id.* at ¶ 24). After receiving no response, Ms. Gerdjikian continued to follow-up with Ms. Mercado and Ms. Franco. (*Id.* at ¶¶ 28, 31). Ms. Gerdjikian's communication attempts were ignored despite the undisputed fact that Ms. Franco represented Ms. Mercado since at least October 30, 2008. (*Id.* at ¶ 8).

On August 3, 2009, over nine months after the Estate retained Ms. Franco as counsel, Ms. Franco finally confirmed her representation to GEICO in a demand letter. (*Id.* at ¶ 32). The demand letter required insurance disclosures, an affidavit from Mr. Swanson, payment of personal property plus sales tax, and a settlement check for the full policy limits. (*Id.*). Ms. Franco also requested compliance within four weeks (i.e., by August 31, 2009). (*Id.*). The day after GEICO received Ms. Franco's demand letter, Ms. Gerdjikian faxed an affidavit of coverage and a certified copy of the policy to Ms. Franco. (*Id.* at ¶ 33). The next day, on August 7, 2009, Ms. Gerdjikian faxed Ms. Franco a blank affidavit and proposed release. (*Id.* at ¶ 34). On August 11, 2009, Ms. Gerdjikian sent a follow-up letter to Ms. Franco. (*Id.* at ¶ 35). The next day, Ms. Gerdjikian sent Ms. Franco another letter and advised her that GEICO issued a check for the property damage and the full BI policy limits and enclosed another

blank release.[8] (*Id.* at ¶ 37). On August 17, 2009, GEICO provided Ms. Franco with the completed affidavit from Mr. Swanson.[9] (*Id.* at ¶ 39). On August 24, 2009 and October 28, 2009, Ms. Gerdjikian sent follow-up letters to Ms. Franco about the proposed release and affidavit and inquired if they were acceptable. (*Id.* at ¶¶ 40, 42). Ms. Franco did not respond until over three months after sending her demand letter (and over two months after her imposed response deadline) and rejected GEICO's "counteroffer." (*Id.* at ¶ 43).

The Estate argues GEICO acted in bad faith because GEICO allegedly rejected the Estate's offer to settle and made a counteroffer to Ms. Franco's demand by sending two proposed releases that contained indemnification language. (Doc. 135). The Estate's "singular focuses on the inclusion of hold harmless or indemnification language in the proposed releases as evidence of bad faith is unavailing." *Eres v. Progressive Am. Ins. Co.*, No. 8:17-cv-2354-T-60SPF, 2020 WL 759918, at *7 (M.D. Fla. Jan. 9, 2020), report and recommendation adopted, No. 8:17-cv-2354-T-60SPF, 2020 WL 758072 (M.D. Fla. Feb. 14, 2020). After receiving Ms. Franco's demand letter on August 3, 2009, GEICO complied with all Ms. Franco's demands except providing

---

[8] Ms. Gerdjikian claims Ms. Barile instructed her to send a blank release for Ms. Franco's review and approval. Ms. Barile denies giving this instruction. The issue of whether Ms. Barile instructed Ms. Gerdjikian to send a blank release is not a material fact and does not change the analysis. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 ("An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.").

[9] Mr. Swanson testified that it was not his signature on the affidavit but that "it looks like [his] mom tried to sign it" on his behalf. (Doc. 131-3, 100:24-101:6). Ms. Franco testified she believed the signature was forged. (Doc. 131-2, 166:5-19). Ms. Franco did not make this opinion known to GEICO, leaving GEICO no way to address it.

a release without indemnification language. However, GEICO provided a blank release and repeatedly followed up about its acceptability. Ms. Franco never responded to GEICO's communication attempts. After Ms. Franco rejected GEICO's "counteroffer," two months after her imposed deadline, GEICO reiterated that the blank release was not a counteroffer and Ms. Franco "may make the changes on the blank release that [GEICO] sent." (*Id.* at ¶ 44). Ms. Franco again did not respond and, instead, the Estate sued Mr. Swanson.

Considering the totality of the circumstances, GEICO acted with good faith and with due regard for the interests of its insured. An insurer that complies with its good faith obligations cannot be liable for bad faith. *See Baranowski v. Geico Gen. Ins. Co.*, 385 F. Supp. 3d 1267, 1275 (M.D. Fla. 2019) (granting summary judgment and concluding insurer did not engage in bad faith by providing release with language that was considered objectionable); *Martin*, 2019 WL 6713436, at *5 (granting summary judgment and concluding that even if the insurer's proposed release language varied from claimant's instructions so it was not an acceptance of the settlement offer, the totality of the evidence did not support a finding of bad faith); *Hayas v. Geico Gen. Ins. Co.*, No. 8:13-cv-1432-T-33AEP, 2014 WL 6883131 (M.D. Fla. Dec. 5, 2014) (granting summary judgment for insurer in bad faith action despite the insurer making a counteroffer to the claimant's settlement demand that the release not contain a hold harmless or indemnity agreement); *Cardenas v. Geico Cas. Co.*, 760 F. Supp. 2d 1305, 1310 (M.D. Fla. 2011) (granting summary judgment for insurer and concluding the claimant could not "rely on some supposed defect in [insurer's]

proposed release" to show bad faith when considering the totality of the circumstances); *Losat v. Geico Cas. Co.*, No. 8:10-cv-1564-T-17TGW, 2011 WL 5834689 (M.D. Fla. Nov. 21, 2011) (granting summary judgment for insurer in bad faith action despite the insurer not meeting the specified requirements of the claimant's settlement offer); *Shin Crest PTE, Ltd. v. AIU Ins. Co.*, 605 F. Supp. 2d 1234, 1241 (M.D. Fla. 2009) (holding an insurer did not act in bad faith by agreeing to settle claim for policy limits, even when it did not include a release of claims).

The duty of good faith required GEICO to settle but the lack of a settlement does not mean that GEICO acted in bad faith. *Davidson v. Gov't Employees Ins. Co.*, No. 8:09-cv-727-T-33MAP, 2010 WL 4342084 (M.D. Fla. 2010) aff'd, 422 Fed. Appx. 790 (11th Cir. 2011). "[GEICO was] not obligated to act perfectly." *Kincaid v. Allstate Prop. & Cas. Ins. Co.*, No. 13-14030, 2014 WL 2048281, at *9 (S.D. Fla. Jan. 3, 2014) *aff'd* sub nom. *Kincaid v. Allstate Ins. Co.*, 573 Fed. Appx. 858 (11th Cir. 2014) (citing *Novoa v. GEICO*, 2013 WL 172913, at *4 (S.D. Fla. 2013)). Rather, GEICO had to "'refrain from acting solely on the basis of [its] own interests in settlement.'" *Novoa*, 542 Fed. Appx. at 796 (internal quotation removed). GEICO needed to "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony*, 386 So. 2d at 785 (citation omitted). The undisputed material facts show that GEICO acted promptly, diligently, and with due concern for its insured's best interest and complied with its good faith obligations.

## III.   CONCLUSION

Viewing the evidence in the light most favorable to the Estate, no reasonable jury could conclude that GEICO acted in bad faith in handling this claim. Thus, it is **RECOMMENDED** that GEICO's motion for summary judgment (Doc. 114) be **GRANTED**.

**ENTERED** in Tampa, Florida on September 29, 2020.

*Amanda Arnold Sansone*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.